16-0322, 16-1380, and 16-1496 Consolidated, Thomas Neuhengen v. Global Experence Specialists, Inc. Anyone who is planning on arguing today, please first step up and identify yourselves for the record. All right. Good morning. Melissa Murphy-Petros for the defendants, G.E.S. and Fred Nierinks. Okay. It's Murphy-Petros. Good morning. Good morning. Patrick Selvey, Jr. on behalf of Thomas Neuhengen v. Plaintiff Appellee and Cross Appellate. All right. Good morning, Mr. Selvey. All right. Now, each of you will have about 15-20 minutes to present arguments. And from that, Ms. Murphy-Petros, you may save out some time for rebuttal. I'll be... There's a cross appeal. Okay. So, all right. Well, I still think maybe you should have the last word, but we'll each give aside time for some rebuttal. How does that sound? Fair? That's fine. Sure. Okay. So, we'll give 20 minutes for sure on the whole, everything. Okay? Okay. Sure. I'll reserve five for the rebuttal. And you'll reserve? Five, or hopefully less. All right. All right. So, you may begin, Mr. Selvey. Thank you. And you may begin. Good morning, Your Honors. May it please the Court, Melissa Murphy-Petros on behalf of the defendants, G.E.S. and Frederick Nierinks. Our Supreme Court has repeatedly held that there is no independent cause of action for willful and wanton conduct in the State of Illinois. A willful and wanton claim must accompany either an intentional tort or a negligence claim. And when that accompanying claim is dismissed, the intentional tort or the negligence claim is dismissed, the willful and wanton conduct claim that goes along with it must be dismissed as well. But wasn't your client kind of incorporated into that negligence count because you agreed that if the employee was found liable, you would be as well? I think that Your Honor may be referring to the negligence count against Mr. Nierinks individually. Yes, we did admit that we would be responsible for any punitive damages that were imposed upon him pursuant to responding at Superior. And how can you say that? Only punitive damages? Well, we had already acknowledged our liability for the compensatory damages. That was count one under responding at Superior. Count two, then, was the individual willful and wanton claim against Mr. Nierinks. We say that we were vicariously liable for that as well. How did you actually, or mechanically, how did you do this? You're saying you admitted responding at Superior for negligence and you also admitted liability for punitive damages for willful and wanton misconduct? Only as to Mr. Nierinks. He did this in our amended answer to the fourth amended complaint. That was a high degree of consistency. How did this get tried if you're saying that you... Well, I think the key is that we have to distinguish between the two willful and wanton counts. There was one against Mr. Nierinks alleging that his actions in driving the forklift were willful and wanton. Then there was a willful and wanton essentially hiring and training claim against GES. The direct negligence claim against GES was dismissed before trial. When you admitted liability? Yes, I readmitted liability for Mr. Nierinks. So then the circuit court allowed that count, the willful and wanton count against GES, to proceed without an accompanying negligence claim. In essence, recognizing an independent claim for willful and wanton conduct based on hiring and training... Is that what she was doing? She wasn't tying it to... She was not. No, no. She was very clear. In fact, the negligence that was admitted on that count all went to GES and not to Mr. Nierinks. Okay, on the negligence, you admitted liability, right? Yes, for Mr. Nierinks. So on that... And Mr. Nierinks admitted negligence. My understanding that the jury was never instructed on liability for the negligence, but it was instructed on the issue of damages because you had admitted... Correct. Okay. Now, how did you do that with the willful and wanton count? How was the jury instructed? The jury was then instructed, obviously over our objection, because we don't believe the willful and wanton count against GES is legally viable. But they were instructed that they could award punitive damages against GES for its conduct with respect to three particular allegations. Okay, that's not what I'm talking about. Okay. What I'm talking about is that you have stated that you admitted that if the... I can't pronounce it. You can call it Fred. We've got Tom and Fred, right? Yes. Okay, so if you admitted that you would accept punitive damages if Fred were found willful and wanton, how did that get conveyed to the jury in this case? The jury was informed that Mr. Mears had admitted negligence, that you had denied willful and wanton, and that GES had admitted its vicarious liability for all of Fred's conduct. Negligence, and if the jury had found willful and wanton conduct on his behalf, that we had admitted our vicarious liability for that conduct by Fred. So you really weren't doing for the willful and wanton what you had actually done for negligence. In other words, you admitted liability, and the only issue for the jury was to determine damages. Yes, and that's also because I'm trying to understand your legal position. So, but for the willful and wanton, you say that you admitted... you're sort of saying we admitted liability, but only if he were found willful and wanton. Okay? So, isn't that your position? It is, and if you tried to do that with a negligence action, you wouldn't get where you want to be, would you? If you had said, okay, we're his agents, but we're contesting his negligence. True? Well, he admitted his negligence. No, I don't think so. No, he denied it. No, I don't think so. No, I don't think so. What I think is the heart of the matter. You say that you have admitted you will accept liability if he's found willful and wanton, but that's not really what you did as far as a negligence action. For the negligence action, you admitted liability, and the only issue the jury was deciding was damages. That is correct. And when you do that, when you do that, when you admit liability for negligence, the law recognizes that negligence is negligence, and the employer shouldn't have to be held... there shouldn't be other evidence about the negligence when you have truly admitted liability. And we did truly admit liability, but not for the willful and wanton conduct. You said if he's found willful and wanton, then we will accept responsibility. That's not the same as what you do under these decisions that allow the, let's say, negligent entrustment to fall because the defendant has actually admitted liability. Well, with all due respect, again, I think we do need to look at the two, willful and wanton count. The willful and wanton count against Fred was exactly the same as the negligence count against him, and involved allegations of how he operated the forklift on the day of the accident. The direct negligence claim against GES, which was dismissed, and that was never objected to by anybody based on the case law, GANS, etc., that claim was alleging that GES had been negligent in his hiring and training, etc., etc. The willful and wanton count against GES was identical to the direct negligence claim against GES, except it said you were willful and wanton when you hired and trained Fred. That's not really the issue right now. That is the issue. Oh, excuse me, I'm sorry. That's absolutely the issue. That willful and wanton count, a claim of willful and wanton hiring and training, does not exist absent an accompanying negligence claim, and there was no direct negligence claim. So the negligence claim that was dismissed, right before trial you show up and you say, here's what we're going to do. We're going to admit vicarious liability, and therefore vicarious negligence, I suppose, on our part because of what Fred did. And then you say, because of that, please dismiss Count 1. Yes, based on the case law. Count 1 alleged negligent hiring? Count 1 did not allege negligent hiring. Count 1 alleged that Fred was negligent in the way he operated the forecast, and that we were responsible for the growth of GES's superior liability. It was all about what Fred did at the time of the accident. So that negligence count said you were negligent hiring. Right. In the fourth amended complaint, it was originally Count 2, I believe. That was a direct negligence count against GES, alleging that GES was negligent in its hiring, training, etc. It's not vicarious liability, it's direct liability. What happened to that count? That count was dismissed based upon GANS and MEF. After Fred admitted negligence, we admitted our vicarious liability for Fred. Why would Count 2 be dismissed based on MEF? It's a direct negligence count against us. I thought MEF said if you try to hold the employee liable for the acts of the employee, you can't have a separate count against them if they already admit to those acts. That's right. But the retention, the bad hiring, bad staffing, that's not based on what the employee did. That's not vicarious liability, that's direct liability. Why would MEF counsel that that be dismissed? That was dismissed because that was the direct negligence claim against GES. The allegations were that our hired employees were hiring a Fred. So even if the allegations against the employer are different than the allegations against the employee, MEF still says you have to dismiss them? Yes. Yes, it does. Because there are two alternative theories of liability. Is that why you shouldn't do that? Not why you should? No, you should, but the admission was made because there are two alternative ways of holding an employer liable for the tortious conduct of its employee. The plaintiff can choose the second one. But it was not because of the tortious conduct of the employee. That's what I'm getting at. It's directly something that they did wrong. Yes, and that's why it was dismissed, which led to MEF. Because the plaintiff chose, you have the vicarious liability path to employer liability, and we have the direct liability path. Once we admitted our vicarious liability, then the direct liability claims go away, and that's guaranteed in that particular trial. So you didn't admit your liability for willful and wanton conduct. There is a difference between your acts related to the negligence and your concession if. Now, let me go back in time. Let's assume we're back in front of the trial judge, and let's assume that she's going to suggest, well, maybe you have something there with this willful and wanton. And so she suggests to the plaintiff, well, you know what? They've got an argument here. What do you want to do? So let's assume, for purposes of, you know, this hypothetical, that the plaintiff decides, well, judge, we're going to dismiss any willful and wanton against, well, we're going to dismiss the willful and wanton against Fred, and we're going to stick with the willful and wanton to the corporation only. What happens then? You can only, that could only ever happen, excuse me, if the direct negligence claim against the corporation had not been dismissed. And, you know, again, just to make the record clear, when that claim was dismissed, based on Zant, et cetera, there was no objections from the plaintiff. It was never written to the corporation or on appeal. That position doesn't match one bit with Lockett. I disagree. Lockett says that the employer can be held to a higher standard, that an employer could be found guilty, or liable, rather, for willful and wanton entrustment. That's what the case says. Yes, it does. And so they decided, you know, in hindsight, well, we're going to follow Lockett. We're getting rid of any willful and wanton allegations against Fred. We are proceeding strictly against the corporation on willful and wanton entrustment to their employee. Where are you then? We are still where we are today, I think, because there's still no direct negligence claim against the employer. And Lockett does say that. You're correct. But it's also actually distinguishable in a very important way. In Lockett, both negligence and willful and wanton counts together went to the jury. Lockett does not support at all what happens here, which is to allow this independent claim of willful and wanton hiring and training without a negligence claim attached to it. I think that's a serious occasion. Let's give the defendant the right to choose what the plaintiff wants to plead and prove. In Lockett, since you've admitted liability, you're admitting liability for negligence, the jury's never going to hear the various theories of what he did as far as his negligence, are they? In this case, actually, they did because there was a contributory negligence affirmative defense. So the jury did actually hear evidence with respect to how the accident happened because they needed to assess fault between Fred and Mr. Newhagen. So in this case, actually, they did hear that. But, again, the willful and wanton evidence that they heard had nothing at all to do with the accident. And, you know, I really can't, I guess, stress this strongly enough. I know I'm sounding like a broken record. No, I understand. I don't think Lockett is – I don't think your interpretation of what that decision means is really complete. And I don't think that, you know, admitting negligence, I think that this case says that admitting negligence doesn't mean you get a pass on willful and wanton misconduct. Lockett actually does not say that. In Lockett, the admission was the agency relationship only. That person is my employee. That is not the same as saying that person is my employee and I am vicariously liable for what he did in the course of his employment. Lockett, the only admission was the former, that the driver was the employee. They did not admit that this driver, excuse me, they did not admit that they were responding as superior or apiece. Does the one follow up any of that? No, I don't think it does. I think in many cases – I'm sorry, sir, go ahead. I think in many cases, you know, an employee who is sued for negligence or an employer who is sued based on their employee's conduct may admit that that person is the employee, but not admit that they're vicariously liable, not admit that that person was acting in the course and scope of his employment at the time he did something wrong. I mean, that's a, you know, considerate and careful business decision. Right. And this is not only a fall from above. Isn't this really a way for any defendant to get out from under any claim of willful and wanton conduct by that employer so long as they admit to negligence? Excuse me. And then are you really trying to make a case for the plaintiff? No, I mean, look, here's the thing. Based on the case law in this state that is established, developed, and has not been challenged at all, the plaintiff has two paths to seeking, holding the employer liable for its employee's conduct. They can choose a vicarious liability path, regardless of their budget, and they're vicariously liable, so on and so forth, or they can choose the direct liability path. You are liable. Your guy did something wrong, and you're liable because you shouldn't have hired him or you should have trained him differently. They are two different paths to the same place. What NASA in those cases say is you can't have both paths in the same case. Plaintiff has to choose. Okay, so if plaintiff chose, in this hypothetical, if plaintiff chose to go the negligence entrustment route throughout and nothing else, where are you? If plaintiff had chosen only the direct liability path, then the direct negligence claim would have gone to the jury. The willful wanton claim attached to that direct negligence claim against GES also would have gone to the jury. So then if the interpretation of the law is as you say, then if this were to be sent back for a new trial, would you agree then that the plaintiff could go the path that we've just described and then really just be doing this thing all over again? No. The direct negligence claim was dismissed with prejudice. Plaintiff did not object to that. Plaintiff did not file a post-trial motion challenging that. That's not been raised by them on appeal. That direct negligence claim has been adjudicated on the merits, on that motion to dismiss, and it's gone. There is no way that they could retry it. Do you have an argument with the punitivist as well or not? Because she granted the JNOB? I think, if I'm understanding your question, yes, she granted the JNOB on the punitivist. Our position is that that should be affirmed. Yes. Our position also is, though, that that doesn't show the error with respect to what happened at trial. Because this independent Wilford & Watton claim regarding hiring and training, which does not exist in the state of Illinois as an independent tort, was tried to the jury, they were two-and-a-half weeks of Wilford & Watton evidence that I think we can all agree would never have come in otherwise. So that certainly could have affected the amount of compensatory damages that were awarded on Count 1, and that's why we believe that Count 1 needs to be retried without the Wilford & Watton claim, which doesn't exist and this case really went to the jury on an erroneous theory of law. And the remedy is a retrial. You think that Neff says you can never proceed against an employer under both respondeat superior and direct liability in the same case, even if they're based on different claims? Yes. I understand if they're based on the same claim. I mean, we see that. Sure. Sure, that makes sense because then you're getting a double recovery. You're suing the defendant twice for the same things. But when the defendant has been alleged to have done totally different things, some just vicariously liable, the others that they did themselves, like they staffed it wrong or they hired improperly, you can't go to trial on both. You cannot. Neff responded to Neff and Gant and the majority of states in this country would be attached to our requirements. But most recently the Supreme Court of Indiana just said, I don't understand why we're going to be looking at other states. Well, I understand we have some huge law here, and the trial judge here interpreted Lockett in a way that you disagree. Yes. Now, the Supreme Court has not, and I don't see any case, really, that's actually addressed this situation we have here. I don't know of any case that said if you admit the negligence of the liability and there's a willful and wanton count, then that falls completely. When you suggest that if he, Fred, is found to be willful and wanton, we will then pay for those punitive damages or accept liability, right? Well, wait a minute. I'm saying not the same as accepting liability for negligence, which you didn't. You didn't accept liability for the willful and wantonness count. You said only if he is found to be willful and wanton will we then. Now, I don't know of any case that allows for this sort of conditional sort of thing you're suggesting. Because you didn't do that, and you didn't do it with your negligence, and none of the cases suggest you can accept the liability only if. Well, for starters, I would say that, you know, our admission with respect to Fred's willful and wanton conduct was necessarily limited to the extent that Fred did not admit willful and wanton conduct. Fred denied that his conduct was willful and wanton. We admitted that he is a majority survivor for all of Fred's conduct. What case would you suggest supports the idea that for negligence you can say if he is, then the whole case would go to the jury, right? If you didn't accept Fred's liability for negligence, the jury would hear everything. They would hear his, you know, whether he was not exercised right here, and then there would be this whole thing on damages. Do you think, then, that does MAP apply in that circumstance? Yes. Yes. Again, Fred admitted his negligence. We admitted our vicarious liability for all of Fred's conduct. At that point, pursuant to MAP, and I understand what you're saying. You're not obviously obligated to look at other states and whatnot, but still, it's an established public policy in this state, from MAP to as recently, I believe, as 2014. There's not another case that distinguishes or disagrees with MAP. But don't you get the dismissal? Don't you get the dismissal under MAP and any of these other cases because you are actually accepting liability, and then it's only a matter of damages? You get the, because you accept, because you are, yes, you are accepting the liability. And in some of those cases, the employee at issue did not admit negligence, but the employer still said, yes, that's our guy. We are vicarious and liable, and the direct negligence claim is dismissed. If you take MAP to its logical conclusion, and believe me, we have all looked. You are right. There is not, we have not found another case like this in Illinois. The closest that we found at the time of trial or even to date is the Elrod case, which is from the Supreme Court of Arkansas, which on these facts, that court said, yes, the willful and wanton claim based on negligent hiring and training must be dismissed when the direct negligence claim that it goes with is dismissed. All right. That's different than what we're talking about. I mean, that's different than the argument we're talking about right now. I mean, the thing that I don't understand is, Justice McBride touched on this, it really allowed the defendants to pick the plaintiff's case form, right? I mean, you've got an accident like this one. You've got an employee who pretty much it seems like he did something wrong operating a forklift. Then you've also got some, maybe hypothetically, some nasty allegations directly against the company. They weren't staffing it. They were prioritizing profits over safety or whatever. And so under your argument, taking that to its logical conclusion, you could look at that case as a defense attorney and say, they're not going to get penalized against Brad because he just screwed up. He made a mistake. He didn't want to run over this person. It's just one of those things that happens, one of those unfortunate things. We like that case better. So let's cop to respond to your superior liability with this, force them to balance the worst allegations, and then say, what can you do with damages? You know, you don't have this anymore. I mean, that seems to be what you did here, which is a smart move, I grant you. But is that okay to do? I mean, why isn't that just letting you control the plaintiff's case for them? Well, I think there's a couple points. First of all, this is what the law in the state of Illinois permits us to do because these are two alternatives. You know, if you're saying the law, this hasn't really ever been decided. This whole scenario is not going to change. I don't want to deal with that, but I think the math rule in those cases are all very clear and undisputed. So that's one thing. Plaintiff has two routes. The law says you've got to pick one. Now, responding to superior admission is valuable also to the plaintiff. Otherwise, it's their burden to prove that this person was acting in the course and scope of employment. So you're not going to be in charge of it. You moved to dismiss the other counsel. You moved to dismiss counsel. Actually, you said we're copying the respondent's theory, therefore we move to dismiss counsel. Right. They didn't say, well, now that we hear that, this is the way we want to go, Judge. You moved to dismiss it, and you got that dismissal. Yes, and the law permitted that, and that actually was a correct ruling. I think I also would argue – But then you're telling me that you are allowed to pick which theory. That's what you're telling me. That's what the law is allowing us to do. Now, if your owners decide that you don't like the math rule, No, it's not a matter of liking the math rule. It's a matter of interpretation. It's not whether we like it or dislike it. I don't think I operate that way. Whether it's, you know, I like this one, I don't like this one. We try to treat it as we best can, and the trial judge red-locked it in a certain way, which you disagree with. Right, my language was not precise when I told you all that. I would say this. This is not the case to take on the math rule. And the reason for that is that, as I said, there is no jurisdiction for ordering a trial on that direct negligence claim. Plaintiffs agreed that that negligence claim needed to be dismissed. It was dismissed. There was no objection. There was no first-trial motion. They agreed? They did, yes. Yes, I mean, she said, do you agree? It's quoted – I can find the page for you. Unrequired. But, yes, everybody agreed that that, the gains of math, et cetera, compelled dismissal of the direct negligence claim against GES. They did not challenge that on a first-trial motion. They did not challenge that on appeals. So, you know, that claim cannot now be retried. It's been adjudicated on the merits. So if this Court wants to re-examine the purposes and the public policies behind the math rule, I suggest that it's really the Lockett rule. You say it's re-examined. Lockett said that the Court had actually interpreted NEP too narrowly. So I don't know that this is what we're really talking about. The NEP rule did not involve willful and wanton. It did not. But, again, as I said, in Lockett you had both a negligent and a willful and wanton conduct claim that went to the jury. The Circuit Court rule read Lockett as holding that this willful and wanton count against the employer for direct liability survived the dismissal of the direct negligence claim against the employer that they were originally parents. Lockett does not say that. Lockett says, as you observed earlier, that even if the employee's conduct is negligent, the employer on a direct liability theory could still be found liable for willful and wanton conduct. But, again, you had a negligence and a willful and wanton claim going to the jury together. With respect to the direct act, what were the remaining, under your theory, of the negligence against a threat? What were the negligent acts that you actually, I guess, for a better word, stipulated? What were the negligent acts of threat that you agreed to accept liability for? And that that also identified as willful. That he didn't look both ways for deductions, he didn't appreciate the tailspin of the forklift, he didn't pay adequate attention to his blind spot. Of all those things, which one? Was the jury advised of these different things? Yes, they were. He was. He was negligent in all of these acts? Yes, that was read to them in the instructions. Yes, it was. And it came out in questioning as well. So, yes, they were advised of that. Those are not the same allegations of negligence that were applied against GES, and those are the allegations that were the crux of the Volcker and Watten count, that he didn't assign a three-man crew, that he didn't check certifications. Threat had nothing to do with that stuff. That was the crux of the direct negligence claim that was dismissed, that cannot now ever be revised. So did you move to dismiss count three? We did. For the same reason perhaps? Repeatedly, yes. And what did Judge Probst say? Judge Probst believed that Lockett supported the Volcker and Watten claim going to the jury. And, yes, I mean, we moved to dismiss at pretty much every opportunity. We had a standing mistrial on that basis. There were no surprises on that one. She did believe that Lockett allowed that Volcker and Watten count against the company for the company's three-man crew stand-alone. Can I ask a question? Sure. Your theory seems to be a simple one, that Volcker and Watten is not an independent cause of action. So once the negligence was dismissed, there can't be any Volcker and Watten. That's it. Yes. It doesn't matter why it was dismissed. But my question is this. You know, when you read the immunity statute, though this is not an immunity case, and the immunity tells you that the only way that you can prove a case against a municipality is by using Volcker and Watten, isn't that, doesn't that create it into an independent cause of action? That's a statutory cause of action, which I think is really important. And you're dealing with a common law. Exactly. This is a common law claim involving private parties, right? So I think that is definitely distinguishable. And that one may not lead into the other. Okay. All right. One of your other arguments is that because this punitive claim went to the jury, that that impacted the trial. Yes. And what is that based on? Well, I think it's very clear that the jury was very focused on the punitive evidence. All the Volcker and Watten evidence, as I said, I think we can all agree, would never have come in and had that Volcker and Watten claim been dismissed. So the jury heard two-and-a-half weeks of evidence about things like OSHA violations in Las Vegas in 2004, Room Six Sigma management, et cetera, et cetera, things that had nothing to do with what happened at McCormick Place that day and how Fred drove the forklift. The jury clearly did, as the record reflects, focus on that. They asked, the majority of the questions we submitted to witnesses were submitted to How many of those did you cite in your brief? Well, there was a brief. How many did you argue? How many did you argue? I'm citing maybe a couple. How many did you actually argue supports your claim? Well, we stated in the brief that they asked approximately 75 questions about Volcker and Watten, which was definitely more than they asked with respect to the negligence. There are questions during deliberations. How many did you cite in your brief and then argue that this particular question shows that this resulted in the award for potential damages? Well, what we cited, what we argued was that the volume of questions demonstrated the jury's keen attention to the Volcker and Watten case, and we did provide record citations. So you didn't really just say what the question was, and then you didn't argue actually how this particular question related in any way to the resulting decision about punitive. Right. I don't know that we could parse each question in that way. I think the sheer volume of questions is what was very glaring, and that definitely shows their attention. But I would also say that we cited the Robertson case at the beginning of our recall brief. Once a case is tried on an erroneous theory of law, as we maintain it is here, the reality is that the punitive testimony, the punitive evidence, could have impacted the compensatory award. Which case was that again? It's Robertson v. Travelers Insurance. The one that was reversed by the Supreme Court on other grounds. On other grounds. We cited one case, didn't we, about an erroneous theory? I'm sure we did. Yes, yes. But again, so once a case is tried on an erroneous theory of law, the only remedy, and our Supreme Court has made that clear, the only remedy is a new trial. So if the erroneous theory of law, if we decide it wasn't an erroneous theory of law, does this kind of all fall away then? Yes, if that's what you decide. As I said, we said that, we maintained it, the case was tried on an erroneous theory of law. And one of your theories is that the actual amount of damages, what was it, something like $12 million before the punitive? $12 million before the punitive. You asked for a reminder of something like three and a half, didn't you? Yes, that was the amount we suggested to the jury. What is the basis of your argument? How did you come up with your number? Wasn't that what you asked for? It was what we asked for, and we made that request based on the evidence that the jury heard. You keep forgetting about his relatives and his fiancée. Oh, correct. Was there medical testimony that he was 30 years old when this happened? Yes, there was. Was there testimony that he had seven surgeries related to this? There was, of course. Was there extensive testimony about his injuries? There was. The mother and the… Yes, there certainly was. And there was testimony that he had a life, a possible life of 45 more years? Yes. Was that it? Yes. And he actually can't even work in this kind of a position anymore? All of that testimony we do… Do you believe that under case law, that if they hadn't even heard the punitives, that we would be in a position to say that this amount of damages, shocks the conscience? I honestly don't know, because they did hear the punitives. The punitives were embedded in the trial. So, the argument that you do know shocks the conscience? We argued that based on the evidence, with his injuries, et cetera, that in our opinion that the $3.5 million was a reasonable, compensating him for his injury in a fair and reasonable way. That was our argument. Okay, the jury disagreed with that. But again, we have to… We were entitled to have those damages assessed and evaluated by a jury that was not operating under an erroneous theory of law. Sure. By a jury that was not hearing all of the punitive damages evidence. There is no way really to know would the compensatory have been more, would they have been less, would they have been the same? That's why the cases from the Supreme Court down which hold that you have to have a new trial when there's an erroneous theory of law, have said that's the only remedy that you can have because you really can't separate that out. And I don't think that the jury could. And I believe that the amount that we suggested and that we have included as an alternative request with remitted earnings is fair and reasonable based on the evidence. All right, do you want… Now, how about the Frost Appeal? Do you want to address that now? They're appealing the JNOB on the punitives. Do you want to address that now or wait? I think we probably should… If there's some other issue you want to get to right now, I think we should hear from you. No, that's fine. All right. Let's go ahead. Why don't you start off and tell us how do you get to punitive when you don't have a liberty? I'd be happy to, Justice Gordon. The Lockett case, and in this case Justice McBride stole my thunder a little bit. The Lockett rule is what really should be applied to this case, not the NEP rule. But to answer your question, Justice Gordon, the question asked by the Lockett Court, the Supreme Court of Illinois, is whether or not, first, is there a duty? So does an employer have a duty to refrain from negligent hiring or retention? Does an employer have a duty to refrain from willful, rotten hiring or retention? And the answer is yes. And so the next question that the Lockett Court answered was is there a necessity of proof? Now, in the NEP case, going back to NEP, which was a 2nd District Appellate Court opinion from, I believe, 1974, eight years before Lockett. In the NEP case what happened was the plaintiff had alleged negligence against the employee and negligent hiring against the employer. And the employer said, wait a minute. We are accepting by Kerry's liability. We are accepting that this individual was our agent. And so once you prove that the employee was negligent, we're already paying compensatory damages. There is no necessity of proof for them going further to prove negligent hiring. And the court agreed with that. And that is the law. We don't dispute that with respect to negligence. Here's what the Lockett Court did. So eight years later, the Lockett Court says, well, wait a minute. In this particular case, we have an allegation of negligence against the employee, willful wanton conduct against the employee, negligence against the employer, and willful wanton against the employer, the latter two being for negligent and willful wanton hiring and retention. Now, contrary, I read the Lockett case different than my opposing counsel. There is no dispute with a close reading of Lockett, but at no point in time during the course of that opinion is it ever evident that there was any denial of agency. Quite the opposite. They had admitted agency from the beginning, and that's evident by the language of the interlocutory appeal. I'm not going to go too far into that. I'm happy to. But let me just put it this way. At the time of trial in the Lockett case, the plaintiff had dismissed the employee from the case entirely because vicarious liability had been admitted. And so why was there a necessity of proof for the willful and wanton hiring in the Lockett case? And here's why. There was a necessity of proof because at the time, it was before the advent of comparative negligence, and so contributory negligence served an absolute bar for compensatory damages for the plaintiff. And so there were allegations of contributory negligence against the plaintiff in the Lockett case, and the plaintiff still had a willful and wanton count against the employer, including one allegation that said willful and wanton hiring and retention. And so the necessity of proof was that if the plaintiff could prove willful and wanton hiring against the employer, then it would serve to prevent any contributory negligence from being an absolute bar on recovery for the plaintiff. And that's exactly what the jury found in the Lockett case. In the Lockett case, the jury found that the plaintiff was contributory negligent, that the defendant, while he was at that point in time a dismissed defendant, but that the defendant employer was negligent by virtue of the agency of the driver, but also that the defendant employer was willful and wanton. And so then the verdict, despite the fact that there was contributory negligence found, still stood. The plaintiff could still recover the damages that the jury found in the Lockett case. And so the whole question as to whether or not a willful and wanton hiring count against an employer can go forward has to do with whether or not there is a necessity of proof. That's the language it uses. And you have to have you file a count that's called a willful and wanton count. Don't you usually see a negligence count and then you add willful and wanton allegations and you ask for exemplary damages after compensatories? I mean, do you normally file a separate cause of action count? Well, let me put it this way. Could you file a one-count complaint that was just willful and wanton with no allegation of underlying negligence? It's not an independent cause of action, is it? Well, when counsel puts in the brief and argues that it's not an independent cause of action, the ruling of those cases and Justice Gordon mentioned total unity cases. Let's look at the Krywin case, for example, cited by the defense. That's a case where the court did use the term that willful and wanton is not an independent cause of action. But it was in the context of a duty. So the question in that particular case, as an example, is that the person got off the CPA bus, slipped and fell on a natural accumulation of ice, and the court said, well, there's no duty. They have no duty to prevent that. And the plaintiff said, yeah, but they were willful and wanton in not preventing it. They weren't just negligent. They were willful and wanton in not preventing it. And the court said, it doesn't matter if they were negligent or if they had a high level of culpability with willful and wanton. There's no duty. It's not an independent cause of action. So to answer your question, if we were to just file a willful and wanton count against GES for willful and wanton hiring, the court would have said, well, what's the purpose of your willful and wanton count? And we would have said, well, we want to put all this evidence in to show that they have a very high level of culpability in this particular case. And the court would say, well, have you had a 604.1 motion granted to allow you to plead where your particular leak includes punitive damages? And if the answer is no, there is no necessity of both. The court would say, well, you can't just plead a willful and wanton count for no reason other than to get any inflammatory evidence. And I think under those circumstances, the court would say, I'm going to dismiss your complaint without prejudice and file a negligence case. And come back to me when you file your 604.1 motion to seek to plead punitive damages, which is what we did in this case. And I hope that answers your question, Justice Ellis. Not entirely. I still don't see where it's an independent cause of action. I mean, every count should... I mean, people plead differently, and you don't always see perfect pleading, but usually every separate cause of action is in a separate count. And I don't normally see willful and wanton claims in their own counts. I see negligence claims where you also plead for punitive damages. I think it would be beneficial, then, for me to give you the history of how we got to where we were at trial and how that ended up at trial. I think we... Well, I kind of have an understanding. In the midst of the trial... Can I just ask you a question? I'm sorry, Justice McBride, but do you agree with their assessment of how count 2 came to be dismissed? I don't need the whole history, but that. That was based on their motion to dismiss? That was based on what I explained earlier about NEP, how there is no necessity of proof for the negligent hiring claim if the defendant has already admitted a vicarious liability for their employee. So under those circumstances, if you prove the underlying negligence against the employee, you're already collecting against the employer. There's no reason to go further and prove that they negligently hired this individual. You're already collecting compensatory damages. However, when a 604.1 motion for punitive damages has been granted and the circuit court makes a finding that the plaintiff has a reasonable likelihood of proving facts sufficient to support an award of punitive damages, then there is a necessity of proof whereby the plaintiff can bring forward evidence to prove the Wilson and Martin claim. But in this case, allowing you to go forward on the punitives happened in, I think it was January 2015. Correct. You tried this case in August 2015. Correct. And when you tried the case, the court allowed the negligence allegations to be dismissed. The count against him was dismissed, wasn't it? No. The count one ended up... That was three that ended up with the jury. Correct. Count one was a negligence count against Fred Nierings and GES. Right. Count two was a Wilson and Martin count against Fred Nierings only. Yes. Count three... Did I say negligence? I meant count two was Wilson and Martin against Mr. Nierings only. Count three was Wilson and Martin against GES only. Okay? Now, when it happened before that, we had negligence with respect to the hiring by GES and Wilson and Martin. This is prior to the dismissal. And the question is not, well, you need an underlying negligence count to have a Wilson and Martin count. That's not the question here, because what happened... That count was dismissed. The negligence entrustment was dismissed. Pursuant to that. Correct. So they're arguing you no longer had any negligence involving entrustment, so therefore the Wilson and Martin count is gone as well. And Lockett said that is absolutely not what is supposed to happen. That's why the circuit court followed the Lockett opinion, and that's why we're imploring that... Was the Wilson and Martin negligence count still existing against the employer in Lockett? It was... By the time Lockett went to trial, the only remaining defendant was the employer. And so the first count against the defendant in Lockett was negligence for vicarious liability. The second count in Lockett was against the employer for Wilson and Martin conduct. All of the allegations save for one, and this is very specifically pointed out in the Lockett opinion. One thing... I think you were talking about this. Here's the language. The necessity of proof of the defendant principal's misconduct in connection with Wilson and Martin entrustment actions is not eliminated simply because the party acknowledges an agency relationship with the tort piece. Right. So your opposition is that because you have to prove it, it doesn't really matter what happened to the count two that was dismissed? Correct. And again, just because the negligence count for negligent hiring was dismissed doesn't mean the Wilson Lockett count needs to be dismissed. That's specific to Lockett, especially when you consider the fact that the negligent hiring count was only dismissed pursuant to the Neff opinion, which doesn't ask the question, is there a duty? It just asks the question, is there a necessity of proof here? And so the Neff case does not cover this case. It does not apply to this case with respect to the Wilson and Martin count in light of the fact that the circuit court granted a 604.1 motion. Why shouldn't we interpret Neff or extend it, if you will, to this scenario here? We have a defendant who has conditionally accepted Wilson and Martin against its employee. And therefore, why don't they get the benefit of the Wilson and Martin on the negligent hiring or entrustment, rather? Why shouldn't they get the benefit of that when they admit or whatever, conditionally accept, I don't know what you call it. So first of all, this concept of acknowledging responding acts superior for Wilson and Martin is not something that exists in the law. The defense has invented this concept, nor should it exist in the law, because the whole purpose of punitive damages, again, after a 604.1 motion has been granted, is for the purpose of punishment and deterrent. It has an important place in society. And so the defense cannot then come in and say, well, we accept Wilson and Martin responding acts superior in the event Mr. Neering has found Wilson and Martin. We'll pay the punitive damages amount assigned to Mr. Neering, if there is any. And therefore, the jury cannot hear about our malfeasance, cannot hear about our Wilson and Martin misconduct in hiring this gentleman and the history leading up to this particular incident that, in our opinion, was particularly egregious. And so why shouldn't they get any benefit? Because counsel points out that there are many business considerations before an employer would accept the agency of an employee in a case. There are many business considerations. Those are considerations when they acknowledge responding acts superior for Wilson and Martin. There's one consideration, to keep their bad acts from the jury after the plaintiff has had a 604.1 motion granted, which allows us to see punitive damages, allows the jury to consider punishing and deterring this defendant and deterring others similarly situated. So the defendant cannot just say, oh, we accept this, and now none of these facts go before the jury because the jury needs to assess those facts in order to Well, did they really do that in this case? I mean, did they really accept responding acts superior liability for Wilson and Martin conduct, even as to their employee? Or did they simply say, if this happens, we will? Is that the same thing that exists in the NAP situation? I mean, I don't know. Is that a conditional acceptance? Were these cases like a conditional acceptance or what? Let me answer that first part of your question that you asked because you said, did they really accept anything? And I think when counsel was arguing, you asked, how was this done mechanically? And the answer is it wasn't. At no point in time did they go before the jury and say, we will be responsible if there is any punitive damages assessed against Mr. Nierinks. If you look at the verdict, for punitive damages, there are separate lines specifically for Mr. Nierinks and for GES. The jury instructions still included ratification, so we still had to go forward and try to prove ratification. They didn't take that off the verdict form in the sense that the ratification was necessary in order to establish that there was actually liability for Mr. Nierinks' Wilson and Martin misconduct. And so there was no mechanism by which the defense acknowledged Wilson and Martin misconduct by FED as being conduct of their own. They still forced us to prove corporate complicity, but off the record, outside the presence of the jury, they say, well, we're acknowledging Wilson and Martin responding as superior, so we don't want any of the evidence to go before the jury. And that is just, that's an absurd result in the law. And let me provide an example. If you have, so if you have an employer that has a legitimate dispute as to whether or not an individual was acting within the scope or was an agent for that particular employer, but you have an employer that has a legitimate dispute, then per net, since there's a denial of the agency, the negligent hiring would not be dismissed because the plaintiff would have to prove underlying negligence against the bad actor, the direct court user. Then the plaintiff would either have to prove agency, in which case the plaintiff would collect against the employer, or prove negligent hiring, in which case regardless of whether or not the plaintiff proves agency, the plaintiff would collect compensatory damages against the employer. So what the defense is essentially arguing is that a defendant employer who has a legitimate agency dispute over an agent, the negligent comprehends state, and then that's the only circumstances under which the plaintiff would be able to bring a Wilson-Martin charge. That doesn't make any sense. We're not going to have, I don't think we're going to see a defendant accept liability for Wilson and Martin's offense. It doesn't make too much sense. So, in this case, would you agree that if they truly, if they had truly accepted liability for the Wilson-Martin project of their employee, that the jury should have been allowed to hear them that, yes, we're accepting that he was actually Wilson-Martin in his actions, and then you decide what those punitive damages should be? No, because punitive damages is based upon the conduct. So punitive damages is not based upon... I'm not suggesting the jury wouldn't still hear the conduct. I'm just saying that to me it seems if you're going to get the benefit of this NEP line of cases, that you have to actually accept liability for your employee's misconduct, and then the jury will decide how much those punitives will be. But that's not going to happen, because it's just not going to be done. An employer is not going to accept the liability for what appears to be more than negligent conduct, right into the level of misconduct, with an utter disregard. They're not going to do that. I don't think they ever agreed to accept what is done in the other cases under a negligence theory. I think if you're going to get the benefit of the dismissal, you have to accept that your employee did act above just carelessness. To me, I don't know, I don't see how you get the benefit if you're just saying, if he is found to be willful in one, then we will accept liability. That's not what is done under any of these other cases, the NEP cases. So I don't know. I'll ask counsel about that again. Maybe you should move on to your other, your cross field. Okay. Alexia, does the judge have any other questions on this? Now, with respect to our cross appeal, and just touching on compensatory damages, not one element has been identified by the defense as being outside the flexible range of reasonable, such that the due deference afforded to the jury should be upset. And so we feel very strongly that this verdict, the compensatory verdict, was well within the flexible range of reasonable. But counsel is correct when she does say that there are cases that hold, that if the jury is instructed on an erroneous theory of the law, that we can't be certain whether or not that didn't impact the decision-making process, and therefore there should be a retrial. The cases cited to support that conclusion can be distinguished. They can be distinguished from this case, and I think the clearest example of why that is not the rule is the Mattiasovsky case. In the Mattiasovsky case, there was punitive damages awarded in that case when it was a wrongful death case. And what happened was the case went up on appeal, and the court looked at the issue of whether or not there can be punitive damages in a wrongful death case or in a survival action, and said that there cannot be, which has long since been the jurisprudence of Illinois and continues to this day, and did not accept a compensatory award in that case. So in other words, in the Mattiasovsky case, they looked at that precise issue. This case was tried on a punitive damages count in a wrongful death case. Punitive damages and compensatory damages were awarded by the jury. We are going to get rid of the punitive damages because it was an erroneous theory of law. You can't get punitive damages in a wrongful death case. But the compensatory damages, because there's no evidence that there was passion or prejudice, there's no evidence that it's outside the flexible range of reasonable, and giving due deference to the jury, the compensatory damages will stand. And that's the Mattiasovsky case. And so I don't agree that if this case was tried under an erroneous theory of law, that by definition the compensatory damages must be thrown out. That is not the law. So with that said, Justice McBride, you pointed out several of the factors with respect to my client's injury, and it was a severe injury. With respect to our cross-appeal and the willful and wanton count, the facts that supported the willful and wanton count, as well as the proximate cause, this is a case that involves a company that has shown a conscious disregard and utter indifference to safety going back for years. This is a company that in 2004 was cited with an OSHA violation having to do with the exact same problem that happened here that allowed Mr. Niering to go to work at this particular show without having appropriate training for this particular booklet. And in 2004 what happened was this company was cited, and they did something called abatement. And abatement means that they promised to change their ways and that they promised to disseminate throughout their entire corporation the procedural changes to change the fact that they were allowing untrained forklift operators to work. They abated that in 2004, and five years later in 2009 it happened again. They got caught by OSHA and cited by OSHA for the same exact thing, for having untrained, uncertified forklift operators operating forklifts. They abated again, again told OSHA we are going to change our ways, we'll change our policies, et cetera. Three years later in 2012 this occurrence happens. They're found again to be in violation of this particular OSHA regulation that requires the training every three years regardless of prior experience. Didn't the trial judge, I don't want to interrupt, but I have to. Didn't the trial judge conclude that when she grabbed the JNOP, she said that the evidence did not suggest that the actions of the corporation did not establish proximate cause. Didn't she say that? That was her finding. So she said it wouldn't have mattered because this was going to happen regardless of the training. Didn't she say that? She did say that, but that's why we assert that that was error. And so in this court's JNOP review of that decision, I would like to point you to some very important facts. So first of all, we have the admission of negligence, and let's even focus on one particular admission that I think establishes proximate cause quite clearly. There was an admission of negligence with respect to the fact that Mr. Neering, Fred, did not use a spotter. He didn't use a spotter at the time, but he hurt my client. Through the union trainer, the head of union training, Mr. O'Donnell, he testified that using a spotter is in the training. Mr. Jackson, Cedric Jackson for GDS, said that the use of a spotter is in the training. Isn't it also an OSHA regulation? I don't think the use of a spotter is an OSHA regulation, but the fact that the forklift operator needs to be trained and evaluated every three years is, and what we established at trial is the training and evaluation for a 4060 Versalift, which is a big $58,000 airplane coming in to get you, because you can't see what's going on. Exactly. I thought there was a statute that required two, but you didn't have to have three. That's a little bit of a different question, because right now I'm talking about even just having two, because when he was moving the Versalift and hurt my client, he only had injured hands. Did he admit when he was admitting he was negligent that he should have had a spotter? Yes. They admitted they should have had a spotter, and that was all part of the training. Did he say he already knew that? No, he didn't say he already knew that. I asked him specifically, had you ever been trained that you needed to have a spotter in the presence of pedestrians when you're moving the 4060 Versalift, and he said no, that's in the training script. And so he said no, he had never been taught that. We know it's part of the training, and the defense expert himself, Brian Avery, testified, and this is in OSHA materials that were admitted as negligent. The OSHA training is for the purposes of the operators to acquire, retain, and use the training that they receive. It's not enough just to acquire it. It's not enough just to retain it. You need to acquire it, retain it, and use it. That's the purpose of the training, and OSHA has determined that when training occurs every three years as it's required, that it reduces incidents because these operators will acquire, retain, and use the training that they receive. And so we know from the evidence that the training would have included that Mr. Mearings would have been taught that he needed to use a spotter in the presence of pedestrians when operating the Versalift forklift. We also know that he testified that he was never taught that. And then finally, not only did we win at the 604.1 motion stage, not only were we successful in preventing motions in limine from preventing evidence with respect to a Wilco-Watton claim and beat the direct negligence claim, but also a special interrogatory went to the jury with respect to proximate cause. And the jury was specifically asked whether GDS's actions, were they Wilco-Watton, and they answered yes. And then the jury was asked in a special interrogatory that the defense proposed whether or not the Wilco-Watton conduct of GDS was a proximate cause, and they said yes. And so even though the circuit court granted the JNOV, we believe it was an error for a couple of reasons. First of all, we believe it was an error because Her Honor did not view the facts in the light most favorable for the plaintiff. Because if Her Honor would have, she would have seen that the jury was justified in their special interrogatory and in their general verdict. In addition to that, if you go back to the initial post-trial motion, because we had a post-trial motion that led to JNOV and the post-judgment motion that we filed, if you go back to the initial post-trial motion, the defense never raised proximate cause as an issue in their post-trial motion. They didn't raise it. The entire transcript of the trial was not provided to the judge, and so in our response to their post-trial motion, we did not fully flush out proximate cause because it wasn't even raised. And so then it was more fully flushed out in the post-judgment motion, but at that point the circuit court had granted the JNOV, and at that point I think it becomes difficult to go back and reverse yourself again, and ultimately that's why we're here on cross-examination. And how are we reviewing Her granting of the JNOV as a reviewing court? JNOV, according to McClure. That is a JNOV review, and so when you – it's really quite simple. Training would have included this, use a spotter. He was never trained that, and that's what he did. And may I say, if he knew to use a spotter in the presence of pedestrians while operating a Versa forklift, he had a pretty good showing, because we had evidence that Mike Fyatt observed him operating without a spotter earlier on in the move-out phase of the show, and then his crew member, Chris Nash, not only saw him operating without a spotter and not only saw him operating in a generally unsafe manner, he reported that to his firm, who was in GES management, a firm for the South Hall, and he did nothing, and that was in advance of Mike Fyatt being injured. And so I think that's a pretty straight connection, a nexus, between the willful and wanton failure to ensure that Mr. Mearings had training and the ultimate injury when there are three instances in the record where he was operating without a spotter. How can he then say, well, I knew not to do that? I don't think – I think viewing the fact in the light most favorable to the plaintiff means that the jury's proximate cause answer in the special interrogatories must be reinstated. Now, getting back to the willful and wanton nature of the defendant's misconduct, the employer, GES not only had these prior incidents in 2004 and 2009, but testimony with respect to this particular show, which is every other year, they never checked for certifications, which is what an operator would hold to prove that he or she has been trained. They had never checked for training and certification in 2012, 2010, 2008, 2006, 2004. Ever since Mr. Mearings had been semi-retired, that's the whole point of having to get it every three years, is to continue to be refreshed. New folklores come out. The verse of 4060 was about eight to ten years old, which is the same time frame as when Mr. Mearings went into semi-retirement. And so for all these reasons, Mr. Mearings was able to operate without getting the required training. And if this isn't enough, GES's operations, head of operations, Dave Mata, so he's operations management for GES. He's based out of Chicago. I asked him, do you agree that not checking for certifications needlessly endangers people? He said yes. The GES operations manager acknowledged that their practices, even though they had been caught twice before, even though they knew it was OSHA regulation, even though they knew it was the safe thing to do, they still didn't develop the necessary resources to check for certification, something that would have been very easy but would have drawn back a little bit on productivity. But it needlessly endangered people, and that's how Tom was so grievously harmed. And it's for all of these reasons, Your Honors, that we ask that you uphold the circuit court's affirmation of the compensatory damages amount, reinstate the jury's entire verdict, including the answers to special interrogatories, and including the entirety of the general verdict. Thank you. Laura? Marky? I'd like to first address a couple points with respect to our appeal. This case, again, really comes down to, I think, a very essential and elemental proposition of law, that there is no independent common law claim for willful and wanton conduct in the state of Illinois. And regardless of why the direct negligence claim against GES was dismissed, once that happened, its accompanying willful and wanton claim had to be dismissed as well. The fact that claimants were allowed to amend their complaint to add a period for cumulative damages does not establish the basis for an independent claim for willful and wanton conduct. It just does not. There's not a single case that supports what happened here. Should there be a different rule, though, in a case like this where there's a negligence perspective and then we have the willful and wanton action, and where the defendant wants the benefit of the NEP, what should the rule be as far as willful and wanton? What should the rule be in terms of the actual negligence that you're admitting liability to? Should it encompass every allegation that was initially made so as to be able to move on to this willful and wanton, or should it be, as you suggested, once it's dismissed, everything is gone, and we can sort of circle around and get rid of any misconduct by a corporation? The rule should be, as we are advocating, there is simply no basis. The blockage does not support an independent claim of direct liability against an employer for willful and wanton entrustment, standing alone, absence, negligence. I think if that were to be abbreviated... So you're saying NEP requires the negligence part to be knocked out. Yes. So then what is the plaintiff supposed to do? Well, I think, first of all, by sending NEP to its logical conclusion,  So all the employer will have to do to avoid a willful wanton claim is to just plead on the respondeat superior and say, oh, you can't do the rest of this. Plaintiff chooses... Right. Right. I mean, plaintiff chooses the theory of how they wish to proceed, vicarious or direct. No. No. No, you choose it, is what you're saying. No, the plaintiff chose it. The plaintiff is the one who filed the complaint. He's got two claims, a vicarious claim and a direct claim. I'm going to plead on this one, so you have to get rid of the other one. At that point, I think plaintiff then could have also made a choice to dismiss Fred from the lawsuit and the negligence action against Fred and the willful wanton action against Fred and proceed. If that had happened, then the direct negligence claim against GES would not have been dismissed, I don't believe, and then they would have had their direct liability period. Again, the NEP rule is not prohibiting the plaintiff from ever getting punitive damages against the employer. What the NEP rule is saying is you have never really envisioned that that wasn't envisioned in the NEP case. Well, and NEP is law. Yes, that's true. And NEP has been applied by this court and other courts in the state consistently as compelling dismissal of the direct negligence claim. Sure. And it's in the context of the facts. That is true. Yes. That is true. We're in the territory. We are. We are. And I would suggest that WACA does not support an independent claim such as the one that went to the jury here. If it did, WACA was decided in the early 1980s. I think we would have been seeing these kinds of claims over and over and over again. In WACA, two claims went to the jury, negligence and misconduct, both against the employer. It was factually very different than what happens here in a critical way. And the fact that there was a claim, really, wasn't the count in Lockett about negligent entrustment to an individual? There were actually four counts that had originally been filed in Lockett. There was negligent hiring, Wilford Wanton attached to that, then negligent entrustment, and Wilford Wanton entrustment attached to that. The trial court dismissed the two latter claims based on entrustment for failure to state a cause of action. The other two claims did go to the jury simultaneously, negligent hiring and training and Wilford Wanton. So, again, whether you call it, whether it's a direct claim or entrustment or negligent hiring, supervision, retention, it doesn't matter. Once we've made our admissions, that claim has to go away. And regardless of the reason why the direct negligence claim against us was dismissed, there is no such thing as a common law, stand-alone complaint or cause of action for Wilford Wanton conduct in this state. There is not. When a company tort goes away, that goes right along with it. Except we don't really have a rule, do we, about this kind of a case? I don't think that we need a rule that's specific to this kind of a case. I don't think anybody's extended enough. I couldn't find any cases. The parties haven't decided yet. No, I agree. We were not able to find a case where the NAF rule was carried forward to its logical conclusion, as we're asking here. But we certainly found numerous cases where, you know, our Supreme Court has said, there just is no independent cause of action for Wilford Wanton conduct. But there was a negligence. Yes, there was one in this case. And there was one that actually remained because there were allegations of negligence that you accepted liability for. Those were allegations regarding Fred's conduct. Yes. And the independent Wilford Wanton claim I'm talking about is the claim that the corporate conduct was Wilford Wanton, not Fred's conduct. Do we have to ignore the elephant in the room that there was those claims and they got dismissed based on NAF? I mean, it's not like the plaintiff just filed a count on Wilford Wanton and didn't say anything about negligence. You got that dismissed based on NAF. Whether the trial court should have done that or not, they did. And the plaintiff dealt with it. But taking your argument as such, we're supposed to have to do the same thing on the Wilford Wanton. Yes. That is exactly taking an argument to a logical conclusion. Otherwise, what you have, what the circuit court has recognized, is an independent cause of action for Wilford Wanton hiring and training under the common law of the state. That has never been recognized. A common law claim of any type of Wilford Wanton conduct, standing alone, has never been recognized. Ever. Our Supreme Court has made that so clear. So, you know, I understand the result is what it is, but, you know, that claim should have been dismissed. And then the case would not have been tried other than one with theory of law that we believe now compels a new trial on count one. I'll just touch very briefly, unless you have other questions. I'll just touch very briefly with respect to the cost appeal. Our arguments with respect to the nature of the Wilford Wanton conduct and the parts that cause it are set forth in our brief. I'll just only add that you do have a theory of what we do, and we also sought J&OV on that count on the grounds that it does, is a non-existent cause of action under the MAP rule, except for all the rules that we've been discussing today. So you can affirm on that basis as well. Let's assume that we actually agree with the trial court's decision regarding Lockett, and that the punitives properly, that issue went to the jury, and then per J&OV. There's been an argument here that clearly the accident that occurred was certainly related to the fact that he didn't have anybody spotted. He had Mr. Nash spotted. Mr. Nash wasn't spotted. The evidence is clear in the record that Mr. Nash was not spotted for him at the time. Are you suggesting he was? Mr. Nash was his crewman, and he testified that he, you know, that's the statute. He testified that he didn't do anything else. Oh, he was. Yes, he was. What I'm saying is the statute caps the crew sizes at two. There were two that didn't. I don't know that Lockett requested a third, including Mr. Nash. Didn't Fred even say himself that there wasn't a spotter? Fred said, I don't believe, no, I don't believe so. Oh, so are you saying the evidence suggests that Fred had someone watching for him and he still did this, still backed up by Mr. Nash? I think that when Fred was on the stand, there may have been a little bit of confusion for him about the term spotter. But he had the statutory mandated crew size. Yes, he did. Either one of those gentlemen could have asked for a third crew member. Fred admitted that he was negligent in not asking for a third crew member. I don't think that Mr. Selby was talking about having three. I think his argument was that Fred was never trained. Well, it has to do with you, about having a spotter, and that there wasn't someone actually spotting for him when he. . . Well, that's a three-man crew allegation. Their allegation was that GEF shouldn't have assigned a third crew member, who presumably, I guess, in their terminology, would have been the spotter. The statute cast the crew size at two. Either of those two gentlemen could have asked for a third. They didn't. Fred didn't admit that that was negligent. So I think that that's what we were talking about. We agree, for the reason that we set this out all in our cross-staff debrief, that the conduct that Judge Post ultimately found, not to rise to the level of willful and wanton conduct, that that ruling was correct and can certainly be affirmed on that basis. She did kind of briefly discuss posthumous cause, and we discussed that. If you have particular questions, though, we did, I think, go through that all very carefully in our Apple Newsbrief. I don't want to just read that to you. And, again, as I said, we also move for J&O to be on the ground that that positive action just doesn't exist and should have been dismissed, and you can affirm on that basis as well. Anything further? No. No, we request a new trial on count one and affirming for the J&O to be on count three. Thank you. Mr. Selby, do you want to make a brief remark on your cross-appeal? Thank you. And as a point of clarification, does the Court find that the Lockett issues are part and parcel of our cross-appeal since it all deals with willful and wanton? Because I would like to address Lockett if you would permit me, but if not because you don't believe that's part of my cross-appeal, I understand that as well. No, go ahead. It will take a few minutes. Yeah, I'll be very brief. A close reading of the Lockett case shows that the negligence, there were two counts left at the time of trial. One was negligence, one was willful and wanton. The only claim as it related to the hiring, because per meth the negligent hiring count had already been dismissed, the only allegations of negligence had to do with the employee bus driver. In the willful and wanton count, all of the allegations of willful and wanton had to do with the bus driver's actions except for one. One of the allegations of willful and wanton misconduct was willful and wanton hiring and retention. So there was no companion negligent hiring and retention allegation in Lockett. Lockett controls here with respect to whether or not there is an appropriate cause of action when we brought willful and wanton even though the negligence hiring claim was dismissed, not because there wasn't a duty but just pursuant to meth. And so because of that, the Lockett rule is really what needs to be applied here. The only difference between Lockett in this case is that Lockett, the necessity of proof for willful and wanton had to do with overcoming the complete failure recovery if there was a contributory negligence finding. Here, it's for punitive damages. And in Illinois, as you well know, the necessity of proof for proving willful and wanton misconduct arises when you're able to win a 604.1 motion, which we did in advance of trial. With respect to the specific facts of the willful and wanton misconduct of GES and the proximate cause, all of the arguments in the briefs from GES, from the defense, they were tried. This is where due deference to the jury, due deference to the special interrogatories that were answered by the jury comes into play. All of these issues were tried. The defense told the jury that Mr. Nierinks already knew all these things. They tried to prove that. They failed. They tried to prove that he already knew the safety rules. They tried to prove that, well, training doesn't really matter. They tried to prove all those things. They argued that. They asked questions of witnesses that. And we had the counter-grounding evidence. And the jury went with us. And that's why we think the circuit court committed error. And that's why we think Your Honors should reverse the circuit court with respect to punitive damages and reinstate the punitive damages, the special interrogatory answers, the general verdict in its entirety. Thank you. Ms. Murphy-Petras, I just want to make sure you feel you've had your day. All right. Okay. All right. Well, thank you all. This was a very interesting case, and it was well-argued and very well-briefed on both sides. So we will take the matter under advisement.